IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL PERKINS,<br><br>  Plaintiff,<br><br>  v.<br><br>MERCEDES-BENZ USA, LLC, et al.,<br><br>  Defendants. | Case No. 22-cv-03540-CRB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE** |

Plaintiff Mitchell Perkins brings this action against Defendants Mercedes-Benz USA, LLC ("MBUSA") and Mercedes-Benz of Marin ("MB-Marin") for breach of implied and express warranties under California's Song-Beverly Consumer Warranty Act ("Song-Beverly") and the federal Magnuson-Moss Act ("MMWA"), and for negligent repair. See Compl. (dkt. 1-1, Ex. A).[1] MBUSA removed the case to this Court, asserting federal question jurisdiction. NOR (dkt. 1) ¶ 4. Perkins moves to remand. Pl.'s Mot. (dkt. 21-1). Defendants move to dismiss and/or strike portions of the complaint. Defs.' Mot. (dkt. 19). As explained below, Defendants have failed to establish that the amount in controversy "more likely than not" meets the MMWA's statutory minimum of $50,000. Finding this case suitable for resolution without oral argument under Civil Local Rule 7-1(b), the Court VACATES the hearing scheduled on October 21, 2022, GRANTS Perkins' motion to remand, and DENIES AS MOOT Defendants' motion to dismiss.

---

[1] The complaint is Exhibit A to the Notice of Removal. See Notice of Removal ("NOR") (dkt. 1) ¶ 2.

## I. BACKGROUND

### A. Facts

On or about November 12, 2014, Perkins entered into a warranty contract for a 2014 Mercedes-Benz GLK 250 (the "Vehicle") manufactured and distributed by MBUSA. Compl. ¶ 10. Perkins first presented the Vehicle for repair in 2016 with 43,248 miles on the odometer. Id. ¶ 17. Perkins alleges that MBUSA failed to conform the Vehicle to its express and implied warranties after a reasonable number of repair attempts, in violation of Song-Beverly and the MMWA. Id. ¶¶ 24, 32, 38, 43, 49, 46, 55, 61. Perkins further alleges that MBUSA was fully aware of its inability to conform the Vehicle to applicable express warranties, but willfully refused to provide materials to effect repair, replace the Vehicle, or make restitution. Id. ¶¶ 34, 41, 44. Perkins also brings a claim of negligent repair against MB-Marin, alleging "fail[ure] to properly store, prepare, and repair the Subject Vehicle in accordance with industry standards." Id. ¶ 66.

In the body of the complaint, Perkins alleges that he suffered damages "in a sum to be proven at trial in an amount that is not less than $25,001.00." Id. ¶ 29. In the prayer for relief, Perkins asks for (among other things) "general, special and actual damages according to proof," "a civil penalty in the amount of two times Plaintiff's actual damages pursuant to" Song-Beverly, and "costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to" that Act. Id. at 10–11.

### B. Procedure

MBUSA removed this case, asserting federal question jurisdiction because the amount in controversy surpasses the MMWA's jurisdictional threshold. NOR ¶¶ 4, 8.

Perkins moves to remand, arguing that MBUSA failed to establish unanimous consent to removal and that the amount in controversy is less than the $50,000 required for federal subject matter jurisdiction under the MMWA. Pl.'s Mot. at 1. Defendants move to dismiss and/or strike portions of the complaint pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure. Defs.' Mot. at 1. Because the Court remands this case, it does not reach Defendants' motion to dismiss.

2

## II. LEGAL STANDARD

A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). District courts have federal question jurisdiction over civil actions that "aris[e] under the Constitution, laws, or treaties of the United States." Id. § 1331. There is a "strong presumption" against removal jurisdiction, and courts "strictly construe the removal statute against removal." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). This "means that the defendant always has the burden of establishing that removal is proper." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation and internal quotation marks omitted). Any doubt regarding the legitimacy of the removal favors remanding the case to state court. Id.

## III. DISCUSSION

Perkins seeks remand on two grounds. First, he argues that removal was procedurally improper because MBUSA has not established that MB-Marin also consented to removal, as required by 28 U.S.C. § 1441(b). See Pl.'s Mot. at 1. Second, he argues that the Court lacks subject matter jurisdiction because Defendants have not shown that the amount in controversy exceeds the MMWA's jurisdictional threshold. Id.

### A. Consent

The Court rejects remand on the basis of lack of consent because Perkins' procedural challenge is untimely and therefore waived. Even if it were not waived, this challenge fails because the Court can infer MB-Marin's consent.

All properly joined and served defendants must "join in or consent to" removal in cases involving multiple defendants. 28 U.S.C. § 1446(b)(2)(A); Hewitt v. City of Stanton, 798 F.2d 1230, 1232 (9th Cir. 1986). Parties challenging removal "on the basis of any defect other than lack of subject matter jurisdiction"—including consent—must file a motion to remand within 30 days after a notice of removal is filed. 28 U.S.C. § 1447(c). The consent requirement is met as long as the removing defendant "avers that all defendants consent to removal" in their timely removal notice. Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1225 (9th Cir. 2009); see id. (noting that sanctions

3

and the ability to object to removal mitigate concerns that a defendant will make a false averment). Several district courts have held that "formal consent is unnecessary 'where the pleadings demonstrated defendants were all represented by the same counsel'" and defendants jointly filed removal notices or oppositions to remand. See, e.g., Tanious v. Gattoni, 533 F. Supp. 3d 770, 775 (N.D. Cal. 2021) (quoting Lewis v. City of Fresno, 627 F. Supp. 2d 1179, 1186 (E.D. Cal. 2008)).

Perkins' consent-based challenge fails because it is untimely. MBUSA removed this case to federal court on June 15, 2022. See NOR. However, Perkins did not file his motion to remand until August 10, 2022, nearly 60 days after removal. See Pl.'s Mot. Therefore, Perkins waived his consent-based challenge to removal because it came long after the 30-day time limit in 28 U.S.C. § 1447(c). See, e.g., Vasquez v. N. Cnty. Transit Dist., 292 F.3d 1049, 1060 n.5 (9th Cir. 2002) (noting that the plaintiff waived their consent-based challenge by failing to move for remand within 30 days of removal).

Perkins' consent-based challenge also fails because the Court can infer unanimous consent. See Tanious, 533 F. Supp. 3d at 775. As Perkins notes, MB-Marin has not specifically communicated consent, MBUSA did not address its co-defendant's consent in its removal notice, and Defendants ignored the consent issue in their opposition. Pl.'s Mot. at 1; see NOR; Opp'n (dkt. 25). However, Defendants share counsel[2] and jointly filed their motion to dismiss and opposition to remand. Defs.' Mot. at 1; see also Opp'n. MB-Marin has also never objected to removal, though it had the opportunity to do so. Courts have inferred unanimous consent in nearly identical circumstances. See Hafiz v. Greenpoint Mortg. Funding, 409 F. App'x 70, 72 (9th Cir. 2010) (inferring consent where defendants shared counsel and jointly filed a dispositive motion); Tanious, 533 F. Supp. 3d at 775 (inferring consent where defendants shared counsel and jointly filed a removal notice, opposition to remand, and motion for leave to file a sur-reply).

For the foregoing reasons, the Court rejects Perkins' consent argument.

---

[2] The record lists Soheyl Tahsildoost of Theta Law Firm, LLP, as the lead attorney for both MBUSA and MB-Marin. Opp'n at 1.

4

### B. Amount in Controversy

Perkins also seeks remand on the basis that Defendants have not shown that the amount in controversy is at least $50,000, as required for subject matter jurisdiction under the federal MMWA. Pl.'s Mot at 5–18. Defendants maintain that Perkins satisfies this statutory minimum. NOR ¶ 8; Opp'n at 1.

"[F]ederal courts only have jurisdiction over [MMWA] claims if the amount in controversy exceeds $50,000," including all claims less interest and costs. Cox v. Kia Motors Am., Inc., 20-CV-02380-BLF, 2020 WL 5814518, at *1 (N.D. Cal. Sept. 30, 2020) (internal citations and quotation marks omitted); see 15 U.S.C. § 2310(d)(3).

Where the plaintiff clearly alleges an amount in controversy that meets this threshold, the requirement is satisfied "unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007) (citations omitted). But if it is unclear whether the plaintiff pleaded the requisite amount, the defendant has the burden to show that the jurisdictional threshold is met by a preponderance of the evidence. Id. Accordingly, where a complaint is facially ambiguous, the defendant must use "evidence combined with reasonable deductions, reasonable inferences, and other reasonable extrapolations" to show that the amount in controversy "more likely than not" exceeds $50,000. See Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). When assessing the amount in controversy, courts "may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence." Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 416 (9th Cir. 2018). Conclusory allegations are insufficient. See Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090–91 (9th Cir. 2003).

As explained below, the amount in controversy is unclear on the face of Perkins' complaint, so Defendants must present evidence showing that it "more likely than not" reaches $50,000.

#### 1. Plaintiff's Allegations

The parties disagree about the clarity of the complaint's allegations as to the amount

in controversy. As noted previously, the complaint alleges that Perkins suffered damages "in a sum to be proven at trial in an amount that is not less than $25,001.00." Compl. ¶ 29. Defendants interpret this language broadly and claim that the allegations in Perkins' complaint establish an amount in controversy of more than $50,000 after adding civil penalties and attorneys' fees. See NOR ¶ 8–10. They assert that they "[have] no burden to supply facts to support the amount by a preponderance of the evidence." Opp'n at 3–4. But Perkins argues that the $25,001 figure reflects "total damages, which include, inter alia, (1) actual damages; (2) civil penalties; and (3) attorneys' fees." Pl.'s Mot. at 7. Perkins contends that the amount in controversy is less than $50,000—or that, at the very least, the ambiguity shifts the burden to Defendants. Id. at 7–8.

"Numerous district courts in this Circuit have concluded that Plaintiffs' Complaint language—i.e., that Plaintiffs suffered 'damages in an amount that is not less than $25,001.00'—is too speculative to conclude that the amount in controversy is satisfied." Cox, 2020 WL 5814518, at *2 (citing Limon-Gonzalez v. Kia Motors Am., Inc., 20-CV-4381-PA (JPRx), 2020 WL 3790838, at *2 (C.D. Cal. July 7, 2020)). These courts have reasoned that the $25,001 figure could denote the total amount in controversy "in the absence of contradictory allegations in the Complaint" or a defendant "provid[ing] a basis . . . to interpret 'damages' to mean 'actual damages.'" See, e.g., Feichtmann v. FCA US LLC, 20-CV-01790-EJD, 2020 WL 3277479, at *3 (N.D. Cal. June 18, 2020) (accepting that "not less than $25,001" could include civil penalties where the complaint lacked contradictory evidence); Steeg v. Ford Motor Co., 19-CV-05833-LHK, 2020 WL 2121508, at *3 (N.D. Cal. May 5, 2020). This Court also recently found ambiguity as to whether a plaintiff's allegation of $25,001 in "damages" figure referred to total damages or only to the "actual damages" mentioned in the plaintiff's prayer for relief. Edwards v. Jaguar Land Rover N. Am. LLC, 21-CV-05061-CRB, 2022 WL 854515, at *3 (N.D. Cal. Mar. 23, 2022). But where defendants provide concrete textual reasons to interpret "damages" to exclude civil penalties, courts conclude that the complaint clearly shows that the amount in controversy is satisfied. See, e.g., Pestarino v. Ford Motor Co., 19-CV-07890-BLF,

2020 WL 1904590, at *3 (N.D. Cal. Apr. 17, 2020) (holding that a complaint satisfied the amount in controversy because it stated in the same paragraph that "[t]he amount in controversy exceeds [$25,000]" and "[i]n addition, Plaintiff seeks . . . [civil penalties], actual damages, . . . and attorneys' fees") (emphasis added).

Here, the Court finds (as it did in analyzing identical text in Edwards) that it is ambiguous whether total damages exceed $50,000. See 2022 WL 854515, at *3. Defendants emphasize that Perkins alleges "damages . . . in an amount that is not less than $25,001.00" and seeks a civil penalty of double actual damages under Song-Beverly, see Compl. ¶ 29, and they assume that the $25,001 of "damages" does not encompass total damages. See NOR ¶¶ 8–10. Yet, as in Edwards, it is unclear whether this reference to "damages" includes all the line items later listed in his prayer for relief ("actual damages," "civil penalties," and "attorneys' fees"). See 2022 WL 854515, at *3. Although the text of this complaint is identical to that in Edwards, Defendants make no attempt to distinguish it. See generally Opp'n. Defendants also argue that Perkins has not "waived recovery above and beyond the $50,000 requirement." Id. at 4. But given the ambiguity of whether Perkins even alleges $50,000, any purported failure to "waive recovery above and beyond" $50,000 is beside the point.[3] See id. In sum, Defendants provide no concrete bases for their interpretation. See Pestarino, 2020 WL 1904590, at *3.

Perkins plausibly argues that the $25,001 in "damages" refers collectively to actual damages, civil penalties, and attorneys' fees, so the complaint does not unambiguously allege the required amount. Pl.'s Mot. at 7; see Edwards, 2022 WL 854515, at *3.

### 2. Defendants' Evidence

Because the allegation as to damages is ambiguous, Defendants must show by a preponderance of the evidence that the amount in controversy exceeds $50,000 (excluding interest and costs). See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir.

---

[3] Even if it were applicable, Defendants do not cite to cases analyzing this waiver argument, and the Court could not locate any cases in which courts have demanded that plaintiffs "waive recovery above and beyond" an amount in controversy when seeking remand. Opp'n at 4–5.

7

1996).  Defendants attempt to demonstrate that the amount in controversy is at least $78,722, including Perkins' potential recovery of actual damages, civil penalties, and attorneys' fees under Song-Beverly and the MMWA.[4]  Opp'n at 8.  However, the Defendants' evidence is too speculative to meet this burden.

### a. Actual Damages

Actual damages under Song-Beverly involve restitution of the "amount equal to the actual price paid or payable by the buyer," minus the reduction in value "directly attributable to use by the buyer" prior to the first repair attempt for "the problem that gave rise to the [defect]."  Botnick v. BMW of N. Am., LLC, 20-CV-10880-ODW, 2021 WL 2804899, at *2 (C.D. Cal. July 6, 2021); Cal. Civ. Code §§ 1793.2(d)(2)(B)–(C).  Defendants present some evidence to specify what those actual damages might be, but this evidence relies on "speculative and conclusory allegations."  Pl.'s Mot. at 8, 15.

### i. Kelley Blue Book Estimate

Defendants contend that Perkins can recover at least $20,974 in actual damages based on one piece of evidence: a Kelley Blue Book ("KBB") estimate of "the lowest possible trade-in value for a base model 2014 Mercedes-Benz GLK 250 in 'Fair' condition . . . , with 100 miles on the odometer, and in the Los Angeles market" as assessed on June 15, 2022.  NOR ¶ 8; Opp'n at 6–7; NOR Ex. B (dkt. 1-2).  They then assert that the maximum recoverable civil penalties are at least $41,948 (two times $20,974 in actual damages).  See NOR ¶ 9; Opp'n at 7.  Using this calculation, the amount in controversy is at least $62,922, even without attorneys' fees.  See id.

Defendants' reliance on the provided KBB-trade-in value of a hypothetical car that is the same make and model year of the Vehicle does not make sense for three reasons.

First, Defendants' submitted evidence contradicts their conclusion that $20,974 is "the lowest possible [KBB-]trade-in value for a base model 2014 Mercedes-Benz GLK

---

[4]  Defendants' math is as follows: $20,974 (actual damages) added to $41,948 (civil penalty of two times actual damages) added to $15,800 attorneys' fees equates to a total amount in controversy of $78,722.  See Opp'n at 7.

8

250 in 'Fair' condition . . . with 100 miles on the odometer, and in the Los Angeles market." NOR ¶ 8; Opp'n at 7. Counsel for Defendants submits that, "[b]ased on KBB, and as set forth in Exhibit B, the lowest trade-in value for a base model 2014 Mercedes-Benz GLK 250 in 'Fair' condition . . . with 100 miles on the odometer, and in the Los Angeles market, is $23,745.00." Gallagher Decl. (dkt. 1) ¶ 3; Tahsildoost Decl. (dkt. 25-1) ¶ 3 (emphasis added). While counsel further states that "[t]he trade-in value is lower than what a vehicle would be sold for at retail," they do not explain this discrepancy. Id. In addition, "a true and correct copy of the [KBB] vehicle valuation" submitted by counsel lists a trade-in range of $19,752–$22,195. Gallagher Decl. ¶ 3; NOR Ex. B; Tahsildoost Decl. Ex. B (dkt. 25-3) (emphasis added). Though the document identifies $20,974 as a trade-in value, it appears that the lowest possible KBB-trade-in value for the vehicle searched is less than $20,974. NOR Ex. B; Tahsildoost Decl. Ex. B.

Second, critical inputs used to generate the $20,974 KBB-trade-in value are arbitrary and unrelated to the Vehicle at issue. The KBB estimate reflects a vehicle with only 100 miles on the odometer that would be listed in the Los Angeles market. Gallagher Decl. ¶ 3; NOR Ex. B. While counsel for MBUSA explains that she "input[ted] the miles of the Vehicle as 100 miles, since the Complaint does not allege the Subject Vehicle was purchased used," the complaint also does not allege that Perkins purchased the Vehicle when it was new. Gallagher Decl. ¶ 3; see generally Compl. Moreover, as Perkins states, Defendants have failed to show "how the Los Angeles market is relevant in [any] [way] to Plaintiff's instant action, which Plaintiff initially filed in the Superior Court of California, for the County of Marin." Pl.'s Mot. at 9; see generally NOR; Opp'n. Nothing in the record indicates that the Vehicle was purchased in Los Angeles.[5]

Third, it is "unclear how the current trade-in value of a similar model vehicle is in [any] [way] reflective of Plaintiff's actual damages here, nor does Defendant provide any

---

[5] Perkins also asserts that inputting the Vehicle as being in "Fair" condition according to KBB's standards is speculative, but this is perhaps reasonable given that the Vehicle is allegedly defective and in need of repair. See Pl.'s Mot. at 9; see generally Compl.

9

explanation for such an assertion." Pl.'s Mot. at 9; see NOR ¶¶ 8–10. Even though Defendants had the opportunity to explain themselves, they failed to do so, and the Court is left to guess how exactly the KBB estimate is representative of potential actual damages associated with rescission, replacement, diminution in value, or reimbursement. See generally Opp'n. It remains unclear how the KBB's June 2022 valuation of a used vehicle with 100 miles on the odometer is at all illustrative of the value of a defective vehicle that was purchased in November 2014. See Compl. ¶ 10; Opp'n 3–7; see also Chung v. FCA US LLC, 21-CV-04577-AB-MAA, 2021 WL 4280342, at *2 (C.D. Cal. Sept. 20, 2021) ("[N]either calculation makes much sense because the KBB value is the current value of a used vehicle, not the value of the defective but new vehicle [when it was purchased]."). Defendants neither address Chung nor describe the probative value of the KBB-trade-in estimate in this case. See generally Opp'n.

Accordingly, Defendants' KBB evidence is too speculative to estimate the minimum recoverable actual damages to any reasonable degree. See Chung, 2021 WL 4280342, at *2.

### ii. Mileage Offset

Perkins also argues that Defendants' evidence of actual damages fails because they did not include a mileage offset to the Vehicle's value. Pl.'s Mot. at 11–13; Reply (dkt. 27) at 4–5. As noted above, actual damages under Song-Beverly involve the original purchase price minus value "directly attributable to use by the buyer" prior to the first repair attempt. Botnick, 2021 WL 2804899, at *2; Cal. Civ. Code §§ 1793.2(d)(2)(B)–(C). The adjustment, often referred to as the "mileage offset," is based on the number of miles a buyer drove the Vehicle prior to the first attempted repair. Schneider v. Ford Motor Co., 441 F. Supp. 3d 909, 915 (N.D. Cal. 2019). Perkins first presented the Vehicle for repair in 2016 with 43,248 miles on the odometer. Compl. ¶ 17.

Defendants contend that they did not have to account for a mileage offset because "[Perkins] is pursuing claims for violation of implied warranty under Song-Beverly and the [MMWA], which do not necessarily provide for a mileage use offset." Opp'n at 9. But

Defendants forget that Perkins' complaint also includes claims concerning <u>express warranty</u> violations under the Acts that do provide for a mileage offset.[6] Compl. ¶¶ 23, 32, 38, 43–44, 55, 61; <u>see also</u> Cal. Civ. Code §§ 1793.2(d)(1)–(2)(C); 15 U.S.C. § 2310(d). In similar warranty cases, this Court has held that it could not estimate total actual damages where a defendant failed to calculate a mileage offset. <u>See</u> <u>Edwards</u>, 2022 WL 854515, at *4 ("[Defendant] has failed to present any evidence of how the mileage offset would affect the overall amount in actual damages. Therefore, [Defendant] has not, by a preponderance of the evidence, demonstrated that actual damages exceed $75,000.").

\* \* \*

Because the KBB estimate is speculative and there is no mileage offset, Defendants have not shown any actual damages by a preponderance of the evidence.

### b.  Civil Penalties

Next, Perkins argues that Defendants failed to justify the inclusion of civil penalties of two times Perkins' alleged actual damages in their amount-in-controversy assessment. Pl.'s Mot. at 13–15; Reply at 2–4. Perkins is wrong: It is well-established that civil penalties under Song-Beverly are considered in the amount-in-controversy analysis. <u>See, e.g.</u>, <u>Romo v. FFG Ins. Co.</u>, 397 F. Supp. 2d 1237, 1240 (C.D. Cal. 2005). Yet this issue does not matter because, "if the amount of actual damages is speculative, . . . an attempt to determine the civil penalty is equally uncertain." <u>Chavez v. FCA US LLC</u>, 19-CV-06003-ODW (GJSx), 2020 WL 468909, at *2 (C.D. Cal. Jan. 27, 2020) (citations omitted). The KBB-based evidence used to calculate actual damages is speculative, and the probative value of that evidence only becomes more uncertain without a mileage offset. Therefore,

---

[6] Perkins' first cause of action arises out of Cal. Civ. Code § 1793.2(d) for MBUSA's inability "to service or repair the Vehicle to conform to the applicable <u>express warranties</u> after a reasonable number of opportunities." Compl. ¶ 32 (emphasis added). The second arises out of Cal. Civ. Code § 1793.2(b) for failure "to commence the service or repairs within a reasonable time and fail[ure] to service or repair the Vehicle so as to conform to the applicable warranties within 30 days." <u>Id.</u> ¶ 38. The third arises out of Cal. Civ. Code § 1793.2(a) for failure "to make available . . . sufficient service literature and replacement parts to effect repairs during the express warranty period." <u>Id.</u> ¶ 43. The fifth alleges that "[MBUSA] violated the [MMWA] when it breached the express warranty and implied warranties by failing to repair the defects and nonconformities, or to replace the Vehicle." <u>Id.</u> ¶ 55.

11

the Court cannot begin to reasonably construe a civil penalty in any amount and will not include civil penalties here. See Mullin v. FCA US, LLC, 20-CV-2061-RSWL-PJW, 2020 WL 2509081, at *4 (C.D. Cal. May 14, 2020) ("[B]ecause the amount of actual damages is uncertain, the Court is unable to determine what civil penalties might be imposed.").

### c.  Attorneys' Fees

Finally, Perkins argues that Defendants fail to show that the claims reach the $50,000 minimum because they do not provide sufficient evidence of attorneys' fees.[7] Pl.'s Mot. at 15–18. The Ninth Circuit recently held that "attorneys' fees are not 'costs' within the meaning of the MMWA and therefore may be included in the amount in controversy if they are available to prevailing plaintiffs pursuant to state fee-shifting statutes." Shoner v. Carrier Corp., 30 F.4th 1144, 1148 (9th Cir. 2022). Song-Beverly provides that "[i]f the buyer prevails in an action under this section, the buyer . . . [may] recover . . . attorney's fees based on actual time expended, determined by the court to have been reasonably incurred." Cal. Civ. Code § 1794(d). Therefore, courts must allow "the defendant [to] attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 794–95 (9th Cir. 2018). However, courts "may reject the defendant's attempts . . . if the defendant fails to satisfy this burden of proof." Id. at 795.

Defendants argue that "[f]ee awards in cases of this nature may be substantial," citing two cases with fee awards of at least $50,000. Opp'n at 7. Defendants also refer to Exhibits A and B attached to a request for judicial notice submitted with their opposition to establish that "plaintiffs' attorneys are commonly awarded tens of thousands of dollars in fees" in Song-Beverly actions. Id. at 8. But conclusory statements are insufficient without evidence showing that the present case is substantively comparable to the cited cases. See Edwards, 2022 WL 854515, at *4; accord Makol v. Jaguar Land Rover N. Am., LLC, 18-

---

[7] Perkins also argues that attorneys' fees should not be considered at all in the amount in controversy because they are too speculative. Reply at 5–6. The Ninth Circuit has squarely rejected this argument. See Shoner, 30 F.4th at 1148; Fritsch, 899 F.3d at 794.

CV-03414-NC, 2018 WL 3194424, at *3 (N.D. Cal. June 28, 2018).  Defendants have not presented such evidence; the only discernable similarity between the present case and the ones to which Defendants refer is the fact that they all involved Song-Beverly claims.  See Opp'n at 7–8; see also, e.g., Schneider, 441 F. Supp. at 914 ("All that Defendants claim is that the same counsel appears in each case and that the subject-matter of the cases are the same.").  The Court also cannot locate the "Exhibit A" or "Exhibit B" Defendants refer to in the record.  See Opp'n at 8; Defs.' Request for Judicial Notice ("RJN") (dkt. 26).[8]  Therefore, they have not shown by a preponderance of evidence that attorneys' fees here will be in the "tens of thousands of dollars."  Opp'n at 8.

Defendants next argue that potential attorneys' fees in this case will "more likely than not" amount to at least $15,800 based on Perkins' counsel's past practices.  Id.  Defendants demonstrate that Perkins' counsel has previously settled for $17,500 and has been awarded $18,481.67 in fees and costs in similar cases.  Id.; RJN Exs. C, D.  This evidence shows that counsel has charged $395–$475 per billable hour and billed 40 hours in Song-Beverly cases.  Opp'n at 8; RJN Ex. D.  Defendants thus conclude that Perkins' counsel "will bill at least 40 hours litigating this matter (inclusive of appearance, discovery, pleading and motion practice, and trial preparation)" and charge at least $395 per hour.[9]  Opp'n at 8 (emphasis in original).  Perkins challenges this calculation because Defendants do not explain how the instant case will generate similar fees and do not

---

[8] Defendants filed a request for judicial notice of two documents filed in California Superior Court to support their opposition to remand: (1) a Joint Stipulation Regarding Attorneys' Fees, Costs, and Expenses in Alexandria Morel v. Hyundai Motor America, CVRI210903 and (2) a Court Order on Plaintiff's Motion for Attorneys' Fees filed by Perkins' counsel in Stacy Milne v. Hyundai Motor America, 19SCV15081.  Defs.' RJN.  Perkins has not opposed this request.  Courts may take judicial notice of facts that are "not subject to reasonable dispute" because they (1) are "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  "Matters of public record may be judicially noticed, but disputed facts contained in those records may not."  Metaxas v. Lee, 503 F. Supp. 3d 923, 934 (N.D. Cal. 2020) (citing Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018)).  This includes state and federal court documents related to matters at issue.  U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  Because the court documents Defendants present can be used to estimate attorneys' fees in this case, the Court GRANTS their request for judicial notice.  See id.; see also Opp'n at 8; RJN Exs. C (dkt. 26-1), D (dkt. 26-2).

[9] A minimum of $395 per billable hour multiplied by 40 billable hours is $15,800.  Opp'n at 8.

provide evidence of attorneys' fees accrued to date. Reply at 6–7.

While some courts have required defendants to "compare or contrast the litigation strategies or timelines" to adequately estimate attorneys' fees, others have held that evidence of counsel's hourly rates and fee awards in previous Song-Beverly cases sufficiently predict attorneys' fees. Compare Schneider, 441 F. Supp. at 914 (finding counsel's past attorneys' fees in Song-Beverly cases insufficient to estimate current attorneys' fees), with Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) (including attorneys' fees in the amount in controversy where defendant had evidence of counsel's hourly rates and fee awards in other Song-Beverly cases) and Makol, 2018 WL 3194424, at *3 (indicating that "billing records from the Song-Beverly Act cases defense counsel has previously handled" would have persuaded the court to include attorneys' fees in the amount in controversy). Given the specificity of this evidence, the Court will include the estimated $15,800 in attorneys' fees in the amount in controversy. See Opp'n at 8.

Even with an estimated $15,800 in attorneys' fees, Defendants have not shown that the amount in controversy is "more likely than not" at least $50,000 because of insufficient evidence concerning Perkins' actual damages and the resulting inability to estimate civil penalties. Therefore, the Court lacks subject matter jurisdiction and remands to state court.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Perkins' Motion to Remand to the Superior Court for the County of Marin and DENIES AS MOOT Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: October 14, 2022

_____
CHARLES R. BREYER
United States District Judge